[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR ORDER TO BAR DEATH PENALTY
The defendant has been convicted of two counts of capital felony, General Statutes §§ 53a-54b (8) and (9). A death penalty hearing has been scheduled pursuant to General Statutes § 53a-46a. The defendant now seeks an order barring the death penalty hearing. CT Page 15941-jo
The defendant claims, pursuant to the eighth and fourteenth amendments to the United States constitution and article one, §§ 1, 8, 9, 10 and20 of the Connecticut constitution that the prosecution's decision to proceed with the death penalty hearing is an abuse of prosecutorial discretion because that decision was based on the race of the victims.
The defendant, Robert Courchesne, is white, the two victims, Demetris Rogers and her infant daughter, Antonia Rogers, were black. Counsel for the defendant, Mr. Gold, has testified that in two separate conversations in which he attempted to work out a plea bargain for his client, that State's Attorney, John Connelly, indicated that there would be no plea bargain because the victims were black.
In order for the defendant to prevail on this motion, he is required to show unconstitutional discrimination in the fourteenth amendment context, or he must show irrationality, arbitrariness, and capriciousness under eighth amendment analysis.
Although the State argued that no hearing should take place, it did not argue that the defendant had failed to make out a prima facie case of unconstitutional discrimination. In deciding whether a defendant has made a prima facie case of purposeful discrimination, trial courts should consider all the relevant circumstances. Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712 (1986). This examination of the defendant's claims must be made while considering previous death penalty cases.
Although different legal and constitutional labels have been attached to claims of racial bias in the imposition of Connecticut's death penalty, the core of these arguments is the same. That is, that African-American defendants whose victims are white are more likely to be prosecuted for capital felony and to be sentenced to death. State v.Ross, 230 Conn. 183, 311 (1994) (Berdon, J. dissenting); State v. Cobb,234 Conn. 735, 738 (1995); State v. Webb, 238 Conn. 389, 555 (1996) (Berdon, J. dissenting); State v. Breton, 235 Conn. 206, 262 (1995) (Berdon, J. dissenting). It is hard to imagine, therefore, that any capital case could exist without notice of the respective races of the defendant and any victim. Recognition by a prosecutor that the victims of a capital felony are from a minority group and the individual charged with capital felony for the murder of those victims is white and that those facts would rebut previous claims of racial unfairness in the imposition of the death penalty is not purposeful racial discrimination.
At the hearing on the request for an order barring the death penalty CT Page 15941-jp phase of this case, Mr. Gold testified concerning his experiences in these cases. He testified that there are capital felony cases that are prosecuted as capital felons in non-death penalty proceedings. Mr. Gold also testified some capital felony prosecutions are settled for plea bargains for a sentence of less than death. Mr. Gold testified he was aware of capital felony prosecutions involving adult and child victims that had been settled for a sentence less than death. None of these are relevant to the defendant's claim and the comparison of one case to another and factors that go into the final resolution of these complex cases further illustrate the difficulty that the defendant bears in his attempt to support his claim.
The defendant relies heavily on the United States Supreme Court's finding in McKleskey v. Kemp, 481 U.S. 279, 309 (1987) and the previously cited Batson case. It should be noted that the claim of racial discrimination in McKleskey involved the assertion that African-Americans who were convicted of murdering white victims were more likely to suffer the death penalty. In Batson, the defendant, an African-American, claimed that potential jurors had been excluded from his jury solely on the basis of being African-Americans. Clearly, these claims of purposeful racial discrimination can be distinguished from the case at hand. The evidence does not exist in the present case to show any discriminatory intent. Neither are the actions of the State's Attorney irrational, arbitrary or capricious. Rather, it appears that the State's Attorney in Waterbury vigorously pursues capital felony convictions and thereafter seeks the death penalty on a consistent and regular basis and does so because the current statutes of Connecticut allow such prosecutions.
In conclusion, the defendant's claims, even if uncontradicted, are not sufficient for the Court to bar the death penalty phase of this prosecution. The Court does not base this decision on a choice of the credibility of the opposing counsel who are equally dedicated to their cause. In accepting the credibility of both adversaries, the Court necessarily accepts the testimony of Mr. Connelly that his decision to proceed with the death penalty in this case is not based on the race of the victims. The status of the evidence, even if there was a need for rebuttal evidence on the part of the State, is not sufficient to show any abuse of prosecutorial discretion. No unconstitutional discrimination has been proven. The prosecutor's decision is not irrational, arbitrary or capricious.
The defendant's motion for an order is denied.
O'KEEFE, JUDGE. CT Page 15941-jq